UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10429-RWZ

TERRI A. ARNOLD

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

MEMORANDUM OF DECISION

July 19, 2011

**ZOBEL, D.J.**

Plaintiff Terri A. Arnold seeks review of a final decision of defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), denying her claim for disability insurance benefits. Both parties have moved for judgement in their favor. For the reasons discussed below, the decision of the Commissioner is affirmed.

**I.    Background**

Arnold was 47 years old at the time of the alleged onset of her disability in November 2005. (R. 76.)[1] At that time, she worked as an office manager, a job she had held for sixteen years. In 2000, she began experiencing pain in her neck and shoulder. Thereafter, she was diagnosed with degenerative disc disease and disc herniation. She underwent surgery in 2000 and again in 2003. She was later

---

[1]Citations to the administrative record (Docket # 17) will be to "R. __."

diagnosed with carpal tunnel syndrome, cervical spondylosis, cervical degenerative disk disease, myofacial pain, neuropathic pain, fibromyalgia, fatigue, and depression. In 2004, she had surgery for the carpal tunnel syndrome. In November 2005, her employer required her to resign from her job due to her frequent and lengthy absences.

She filed an application for disability insurance benefits with the Department of Health and Human Services, Social Security Administration ("SSA") on February 1, 2006. (R. 71-135.) Her claim was denied initially (R. 68) and again on reconsideration (R. 65-67.) Pursuant to SSA regulations, plaintiff filed a timely request for a hearing (R. 64), which was held before an Administrative Law Judge ("ALJ") in May 2007.

Her claim was denied. In a written decision dated July 24, 2007, the ALJ found that plaintiff is unable to perform her past relevant work, but nevertheless concluded that in light of her age, education, work experience, and residual functional capacity, she is capable of making a successful adjustment to other work that exists in the national economy. (R. 41-51.)

The Appeals Council granted plaintiff's request for review and remanded with instructions to resolve a number of issues, including the ALJ's mischaracterization of a treating physician's assessment, his failure to address several limitations reported by various physicians or to include them in the hypothetical questions to the vocational expert, and his failure to specifically identify inconsistencies that formed the basis of his decision, and ordered him to reevaluate plaintiff's credibility and adverse side effects of her medications. (R. 12-13.)

Following remand, the ALJ held a supplemental hearing on November 20, 2008 (R. 445-483), and again found against plaintiff. (R. 24-37.) The Appeals Council denied further review. (R. 6-9.)

Plaintiff has moved for an order reversing the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). (Docket # 18.) Defendant seeks affirmance. (Docket # 23.)

## II.  Discussion

### A.  Legal Standards

Plaintiff is entitled to social security disability benefits if she is disabled, as that term has been defined by statute and interpreted by regulation. The statute defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The SSA has promulgated regulations which require examiners to analyze each claim in accordance with the following five steps:

(1)  if the claimant is engaged in substantial gainful activity, she is not disabled;

(2)  if the claimant is not performing substantial gainful work, her impairment(s) must be severe before the claimant can be found to be

disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1 [of 20 C.F.R. Part 404] Subpart P, Regulation No. 4, that she is presumed disabled without consideration of age, experience and work experience;

(4) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) does not meet or medically equal a listed impairment contained in Appendix 1 [of 20 C.F.R. Part 404] Subpart P, Regulation No. 4, then the commission will "assess and make a finding about [claimant's] residual functional capacity" based on the evidence in the case; and

(5) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; if the claimant's impairment or impairments prevent her from performing her past relevant work, she is not disabled if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors.

See 20 C.F.R. § 404.1520(b)-(g).

### B. The ALJ's Original Findings (2007 Decision)

During the 2007 hearing, two witnesses testified: (1) plaintiff; and (2) vocational expert Steven Sachs. (R. 485- 513.) Plaintiff also submitted medical records of treating personnel, including her primary care physician, Dr. Warren Wood, as well as notes of Laurie Morrow, a nurse practitioner. She also submitted the reports of several specialists, Dr. Keith Rafal (fibromyalgia specialist), Dr. David Boland (carpal tunnel surgeon), Dr. Charles Fager (a neurosurgeon), Dr. Henry Crowley (a pain management specialist); Dr. Parakrama Ananta (rehabilitation specialist); Dr. Claude Curran (mental

4

health specialist); Deborah Jesdale (mental health therapist); and Dr. Norman E. Weitzberg (neuropsychological evaluation).

Respondent submitted a report from a non-examining physician, Dr. Marsha Tracy, M.D., who evaluated plaintiff's application and medical history, and a questionnaire from Nurse Mary Goncalo and several state agency consultants regarding her residual functional capacity.

Plaintiff testified that she had fibromyalgia with chronic pain and fatigue, cervical degenerative disc disease, which persists despite surgery for that condition, and right-sided carpal tunnel syndrome, for which she had two surgeries. She also suffers from arthritis, bladder impairment, and a fracture of her tailbone. As a result of some of these ailments, she stated that she has limited use of her right hand, and consequently, a limited ability to perform basic daily functions. Finally, she has been treated for depression and anxiety.

The vocational expert characterized plaintiff's past relevant work as skilled and light. (R. 35.) He further testified that even though limited in the use of her right hand, and limited by moderate reduction in her ability to maintain attention and concentration, she could perform light work, which is defined by the regulations as walking some of the time, but mostly sitting while pushing and pulling arm or leg controls. See 20 CFR § 404.1567(b). For example, she could perform work as a security guard (83,237 such jobs existed in the national economy and 1,759 jobs existed in the regional economy), a parking lot attendant (44,400 such jobs existed in the national economy and 855 existed in the regional economy), and a production inspector, reducing some

percentage of such jobs to accommodate her use of a hand splint. He noted that, adjusting for her limited hand use, there were 100,000 such jobs in the national economy and 2,500 jobs existed in the regional economy.

Applying the five-step evaluation process, the ALJ found first that the plaintiff has not engaged in "substantial gainful activity" under 20 C.F.R. § 404.1520(b) since the alleged onset of her disability on November 22, 2005. (R. 43.) Second, he determined that plaintiff's impairments were "severe" within the meaning of the regulations but, with respect to step three of the regulations, not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P (R. 44).

Turning to the fourth step of the regulations, the ALJ concluded that plaintiff was unable to perform past relevant work, but that she had the "residual functional capacity" to perform a limited range of "light" work existing in significant numbers in the national economy. (R. 44.)

In reaching his decision, the ALJ concluded that although sufficient medical evidence suggests that plaintiff's impairments produce some symptoms alleged, her "statements concerning the intensity, persistence and limiting effects of these symptoms" are "not entirely credible." (R. 45.)

### C. The Appeals Council's Remand

The Appeals Council issued a remand order requiring the ALJ to "re-evaluate the claimant's credibility with attention to reports of adverse side effects from her medications" and to address certain findings that were inconsistent with the record. Specifically, it stated that the ALJ: (1) mischaracterized the assessment of Dr. Curran

6

when he concluded that plaintiff had "poor attention and concentration" when in fact Dr. Curran stated that she had "no" capacity for maintaining attention and concentration and noted that she could not travel alone and needs to be driven by her husband or daughter; (2) failed to reference the opinions of therapist Jesdale and Dr. Tracy with respect to plaintiff's difficulty dealing with daily stress; (3) inexplicably did not include certain limitations in the hypothetical questions posted to the vocational expert; and (4) failed to state how the treating opinions and assessments were inconsistent with the record as a whole.

### D. The ALJ's Findings Post-Remand (2009 Decision)

At a supplemental hearing on November 20, 2008, the ALJ heard four witnesses: (1) plaintiff; (2) her husband; (3) Dr. Stuart Gitlow (a psychiatrist); and (4) Steven Sachs (a vocational expert). Plaintiff testified that all of her conditions had worsened. She had more fatigue, more pain in the hands requiring use of bilateral braces on a constant basis and ongoing neck pain. (R. 462-463.) She said that she is only able to perform light chores and requires frequent rest breaks, she has trouble holding items such as books and dishes, and she requires additional sleep after taking her medication. Her husband testified that she has exhibited fatigue, lack of concentration and memory. As a result, she has considerable difficulty with daily activities.

Testifying on behalf of the SSA, Dr. Gitlow stated that plaintiff's depression and anxiety were related to her chronic injury and did not suggest an independent psychiatric disease. Nor is there any indication of worsening of the condition, as there

7

was no neuropsychological testing since March 2006.

The vocational expert again concluded that the plaintiff's skill and exertional level was such that she had the capacity to perform light work, albeit limited to sedentary levels of lifting, carrying, gripping or grasping with both hands. (R. 477-479.) He further testified that even given her limitations (immobilization of both hands, the need to take unscheduled work breaks up to 30 minutes, shortened range of motion in her neck, and moderate reduction in her ability to maintain attention and concentration), she would still be able to perform the light work of a security guard and a parking lot attendant. He acknowledged that the immobilization of her non-dominant hand would reduce the numbers of production inspector jobs available to her (R. 478-479), which is further reduced given her bilateral hand immobilization. Withal, he concluded that there were 7,000 production inspector jobs nationally, and 75 in the regional economy. The numbers for the parking lot attendant and security guard would not be affected.

Again applying the five-step evaluation process, the ALJ reiterated his earlier conclusions as to steps one, two and three. As to the fourth step, he again found plaintiff unable to perform past relevant work, but that she nonetheless had the "residual functional capacity" to perform a "light" work existing in significant numbers in the national economy. (R. 35-36.)

With respect to the specific issues the Appeals Council ordered him to address on remand, the ALJ did expressly consider the evidence from Drs. Curran and Wood and Ms. Jesdale in the context of the record as a whole. In the end, however, he did

not fully credit their opinions for lack of support in their own records.  He further noted that plaintiff, despite her many complaints, had failed to follow many of the treatment recommendations of her medical providers, and again found her complaints of limitation inconsistent with the record.  (R. 33-35.)  The ALJ also expanded the scope of the vocational expert's testimony with plaintiff's limitations in hypotheticals.  (R. 36.)  But none of these considerations altered his initial conclusion.

### E. Application of Social Security Statutes and Regulations to the ALJ's Determination

This court must uphold the decision of the Commissioner if it is supported by substantial evidence.  See Phillips v. Barnhart, Civ. No. 02-11115, 2003 WL 21877761, at *1 (D. Mass. Aug. 8, 2003).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1991).

Plaintiff objects that the ALJ's conclusion that she is not disabled was not supported by substantial evidence.  She raises two specific objections: the ALJ erred in finding (1) that her subjective complaints of pain and fatigue were not credible; and (2) that she has a residual functional capacity for light work.

#### 1. Plaintiff's Credibility Regarding Complaints of Pain and Fatigue

An ALJ's credibility determination is owed considerable deference, see Dupuis v. Secretary of HHS, 869 F.2d 622, 623 (1st Cir.1989), although the step-by-step decisionmaking process in social security cases is severely circumscribed.  Thus, in

evaluating a claimant's subjective complaints of pain, an ALJ must consider the factors set forth in Avery v. Secretary of HHS, 797 F.2d 19 (1st Cir.1986), as they relate to the evaluation of plaintiff's subjective complaints of debilitating depression. These so-called "Avery Factors" are codified in 20 C.F.R. § 416.929. They are:

> (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the medical symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness and side effects of any medication, (5) treatment other than medication the claimant receives, (6) measures claimant uses for pain relief, and any other functional limitations and restrictions due to the claimant's impairments.

§ 416.929(c)(3)(i-vii).

Then, in assessing the credibility of a claimant's complaints of pain, the ALJ must consider whether, in light of the Avery factors, her complaints are consistent with the objective medical evidence and other evidence in the record. See Shields v. Astrue, No. 10-10234, 2011 WL 1233105, *11 (D. Mass. 2011). See also 20 C.F.R. § 404.1529(a).

### a. Plaintiff's Physical Impairments

#### i. Neck Pain

Plaintiff complained of neck pain. She produced extensive medical records that showed that she had significant neck pain. She underwent a cervical laminectomy in 2000 and again in 2003. She was treated with medication and trigger point and epidural injections. Her primary physician, Dr. Wood, noted that she suffered from a combination of fibromyalgia, neck pain, cervical spondylosis and cervical degenerative disease. However, as noted, the examinations consistently failed to show any

10

significant restrictions due to the neck pain. Examinations by Drs. Fager, Stowe and Rafal show that plaintiff demonstrated good range of motion of the head and neck, good upper extremity strength, and no sensory loss.

### ii. Lower Back Pain

Plaintiff also complained of lower back pain. She produced medical records demonstrating that she had complained of lower back pain upon prolonged standing, walking, or bending.

The ALJ found those records unpersuasive. Upon examination, plaintiff's straight leg raising was negative, her gait was normal, and range of motion of her lower extremities was within normal limits. Moreover, Dr. Ananta's examination of the lumbosacral spring test showed minimal lumbar paraspinal spasm, and the range of motion of her lumbar spine was restricted only upon extension.

The ALJ also concluded that the plaintiff's credibility was undermined by her failure to comply with recommendations for treatment. He noted that Dr. Rafal referred her for fibromyalgia, Dr. Ananta recommended a physical therapy program, Dr. Fager recommended a program of shoulder exercises, and Dr. Wood suggested weight loss and an exercise program. Plaintiff failed to follow through with these programs.[2] A claimant's failure to follow prescribed medical treatment contradicts subjective complaints of disabling conditions and supports an ALJ's decision to deny benefits.

---

[2] For example, plaintiff was referred to physical therapy for fibromyalgia, but in February 2006 informed Dr. Rafal that she had not undergone any physical therapy. (R. 177, 324). Dr. Ananta prescribed a physical therapy program in March 2008, but plaintiff did not engage in physical therapy beyond her initial evaluation. (R. 376, 388-391).

11

See Russell v. Barnhart, 111 Fed. Appx. 26, 27, 2004 WL 2260100, *1 (1st Cir. 2004) (affirming denial of benefits where claimant did not follow through with securing medical treatment). Substantial evidence supports the ALJ's conclusion.

### iii. Hand and Wrist Pain

Over several years, plaintiff complained of significant pain in both of her hands. She has received periodic treatment for wrist pain since December 2003. She underwent surgery (carpal tunnel release) on her right wrist in 2004, and thereafter reported that the numbness on the right side was improved. In 2006, she complained of bilateral wrist pain and received a cortisone injection and a wrist brace on her left hand, both of which helped. In 2007, she received a second surgery on her right wrist, after which she wore a wrist brace and was instructed to perform a range of exercises. In August 2008, she again was treated for pain in her left hand with injections of cortisone and Xylocaine. She received repeat injections the following month and was advised to use thumb stabilizers. However, other than a cortisone injection in August 2008 and a repeat injection the following month, there is no evidence of treatment thereafter nor of any worsening of her condition. As of the date of his decision, the ALJ's conclusion that the surgeries produced good results is fully supported.

### iv. Daily Activities

The ALJ further noted that, despite her complaints of pain, plaintiff was able to engage in significant daily activities. She testified, for example, that pain prevented her from driving, yet she admitted that she picked her grandchildren up from school and drove to medical appointments. Although she testified that she cannot perform

household chores in long intervals because she needed to stop and rest due to pain and fatigue, she takes care of her small grandchildren.

Based on the medical evidence of physical limitations, the ALJ's decision that plaintiff was not disabled is supported by substantial evidence in the record.

### b. Plaintiff's Mental Impairments

Plaintiff also complained that she suffered from depression and anxiety. She produced evidence that she was treated for a major depressive disorder, post-traumatic stress disorder and a panic disorder. In 2006, Jesdale diagnosed major depression and opined that plaintiff had a serious impairment in social and occupational functioning.

The ALJ concluded that examinations did not reveal a disabling condition. Plaintiff's mental impairments did not result in a marked restriction of the activities of daily living, maintaining social functioning, concentration, persistence or pace. Nor did they result in repeated episodes of decompensation. The ALJ concluded that Jesdale's findings were inconsistent with the fact that during most of the period covered by her notes plaintiff was working full time as an office manager and providing help to her daughter and granddaughter. The medical evidence supports the ALJ's conclusion.

### 2. Plaintiff's Residual Capacity for Light Work

Plaintiff next objects to the ALJ's conclusion that she retains the functional capacity for light work. Specifically, because the ALJ found that she was restricted to

sedentary levels of force for lifting, carrying, gripping, and grasping, his assessment is reflective of sedentary work, which would render her disabled under the Medical-Vocational Guidelines. She further asserts that the opinion of Ms. Goncalo that plaintiff had "moderately severe" limitation in attention and concentration should have been adopted, and that would render her unable to perform the jobs identified by the vocational expert.

Neither of plaintiff's objections has merit. While the ALJ found that plaintiff was restricted to sedentary levels of force for lifting, carrying, gripping, and grasping, this does not equate to a finding that plaintiff was restricted to sedentary work. Rather, she was able to perform the demands of light work, defined by the regulations as requiring a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. See 20 C.F.R. § 404.1567(b). Accordingly, her assertion that she was restricted to sedentary work and should have been found disabled is not supported by the record.

Next, plaintiff contends that the ALJ erroneously ignored findings of Ms. Goncalo, nurse to Dr. Curran, plaintiff's psychotherapist, who noted that plaintiff had a moderately severe limitation in attention and concentration. The ALJ correctly noted that the Goncalo's conclusion was not that plaintiff had a moderately severe limitation in attention and concentration but, rather, that she had moderately severe limitations in her abilities to perform complex tasks, perform repetitive tasks, and perform varied tasks. With respect to plaintiff's ability to perform simple tasks, however, Goncalo concluded that she had only a "mild" limitation. She is therefore limited to performing

14

simple work tasks. The ALJ did not misinterpret the evidence.

## III. Conclusion

The ALJ's determination that plaintiff is not disabled as defined in the statute is supported by substantial evidence. Accordingly, Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket # 18) is DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket # 23) is ALLOWED. Judgment may be entered accordingly.


|   July 19, 2011   |   /s/Rya W. Zobel   |
|---|---|
|   DATE   |   RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE   |